May it please the Court, Corey Boyd for Stephen Kaulick. I intend to reserve two minutes for rebuttal. The Ninth Circuit has recognized that there is nothing more stigmatizing than being labeled a sex offender, and yet Mr. Kaulick was labeled a sex offender and forced to suffer the consequences of the classification not by a jury, but instead by prison officials without due process protections of an adversarial proceeding he would have had in trial. Kaulick is only asking to receive those due process protections and be allowed to present evidence before being classified as a sex offender. The district court found that because Mr. Kaulick was not forced to undergo mandatory treatment, he did not have an identifiable liberty interest in not being labeled a sex offender. However, it is not necessary that Mr. Kaulick be forced to undergo treatment. Mr. Kaulick's due process rights were violated under both the independent due process liberty test and the State created liberty interest test. Breyer. Counsel, how do we get to your client's claim about the initial classification when he didn't protest this in 2001 when he was first classified? Why isn't the statute run? The statute isn't run because what he's challenging is his classification in 2006, which was appealed in 2007. But he wasn't classified in 2006. That was his opportunity to challenge it. And the standards are very, very different in California for challenging the standard, for challenging in 2006. And if you're asking us whether he gets due process on that challenge, that's going to be a much, much narrower set of procedures that your client gets than what he would have gotten in 2001, even assuming all of the stigma, stigma plus problems. And that's true, however, because of the way that the California prison system has set up being reclassified. He really does get a new look at his case every time he goes up for a review. But the standard of review is very narrow. In other words, don't they have to find you tell me what the standard is. Let me not put words in there. So they do have to find new and compelling information. The problem is without due process protections, without being allowed to present witnesses and present evidence, there's no indication that he could ever present new and compelling evidence. Right. But do you have anything that suggests that there is new and compelling? He's claiming in his brief that the new minute order should be considered, that that's new and compelling information, that his charges were not dismissed that they were in fact dismissed in the interest of justice. Secondly. But that's not new. He knew that in 2001. But he's not been given the chance to present that in a classification hearing. Oh, yeah, but that's why there's a statute of limitations. I mean, that's what keeps us from having stale claims. Just because you didn't bring a claim and the statute of limitations runs doesn't mean that it's now new information. You can avoid a statute of limitations. But he's not yet been afforded the opportunity to present that for a review in his classification. And so. But that would be a consequence of a statute of limitations in any case, wouldn't it, counsel? Yes, it's true. But he still, if he were granted the correct protections, then he would be able to present this for the first time, for the first time he'd be able to present new information. Additionally, he's pointed out that he's not been afforded the opportunity to present witnesses, that in any of his proceedings he's not been able to call people to review any of the statements that have been made. Right. Again, if you were, if we were here in 2002, that would be the argument. But in 2006, he can only present new and compelling evidence to have the, have the classification revisited, and you don't have anything that's really new, do you? Not that he's been able to present. However, if, again, he were afforded the protections provided by the due process, he would be able to present new and compelling information. Well, what his basic theory is, that he's never been convicted of sex offense, so therefore he shouldn't be a sex, shouldn't have the sex offender designation? Correct. And the rules are that you don't have to be convicted, you have to, your record has to show that you've been charged? Correct. And what is wrong with that? What's wrong with that is before he's, before he is able to be classified as a sex offender, he has a liberty interest. Right. And so. Are you claiming he's never been charged? He, sorry, he has been charged, before he's classified as a sex offender, he has a liberty interest in receiving due process protections. So there's nothing, the statute is not unconstitutional to labor, to label someone who hasn't been convicted. What's the, what the problem is, is that before they classify a prisoner, that prisoner deserves due process protections. And the protections that are lacking in this case are the ability to present evidence and the ability to call witnesses, which are the same protections that would be afforded if he were actually being convicted in an adversarial proceeding. But what would the evidence show? It's not clear what the evidence would show. It's not clear because he's never been able to call. How do we know that there's any, that there's been a foul here? And the thing is the district court didn't even get to that. They dismissed it because he wasn't forced to undergo mandatory treatment. However, if this Court finds that mandatory treatment isn't necessary, but instead other tangible interests can qualify it in the Stigma Plus test, then the Court can actually get to the question of what would he present. What is the new evidence? But since you don't dispute that he was charged with a sex offense, and that is the reason for the classification in California, and you're not contesting that that's unconstitutional, what is, what is there to contest here? The problem is that before California can classify someone who has not been convicted of a sex offense as a sex offender, they, the prisoner deserves due process protection. So that's the question, is if this classification. So are you claiming that California now has to have a hearing for every person in the prison system that has an R because he's been charged with a, with a sex offense, even though there's no question that the person has been charged with a sex offense? That every person deserves to be. The rest of your position? Correct. That every person who's charged with, who is labeled with an R suffix, who has not been convicted of a sex crime, deserves the opportunity to present witnesses. They have to go through the whole prison population in California and provide that hearing. For everyone that was not convicted, correct. But what is it that the witnesses would testify to? That he wasn't charged? Or that he was, that he was charged erroneously? What is it that he, what is it that he wants to try and prove? Because if the question in California is were you charged, that seems to me that you don't have any witnesses that are going to contest that. So I guess the test is not were you charged. The test is do your, does your information that was used to convict you show sexual offenses? And here it was the police report. It wasn't that he was charged with a sex offense. It was the police report where the victim testified that he did in fact try to rape her. What would be contested is it's possible that the witness could recant those statements. I mean, it's possible that the information collected in the police report could be challenged. Because the test is not whether you're charged, because obviously he's been charged. The test is what in the documents of your conviction shows evidence of a sex offense. And so the prisoner should be allowed to refute those documents that, that were not, that were not used to convict him. Are you challenging the constitutionality of the California Penal Code section? Is that what you're saying? We're not, we're not challenging the constitution of the penal section. What we're challenging is the process given. But, but it's, the California law permits classification based on records of arrest, et cetera. Correct. And that, that's the law. Correct. And you're saying it's not properly applied by the institution? Correct. Or, or even that, they're still allowed to use the records of arrest. They're still allowed to use a police report. But in those considerations, the witness should be also, or the prisoner should also be able to refute those, those reports. Because the U, the UCC and the ICC look at the information. They look at what's before them. But they have no contradicting information presented by the prisoner, because the prisoner isn't allowed to present or isn't given the opportunity to present any conflicting information. Okay. Thank you. You're representing your client through the pro bono, our pro bono program? Correct. Thank you. May I please the Court? Good morning. My name is Shannon Hewitt, and I represent the four appellees in this case, members of the Classification Committee, who heard Mr. Cowlick's appeal challenging his R-suffix over five years after the R-suffix was put in place. I do believe, as the Court has mentioned, there's a huge issue in that Mr. Cowlick's case is barred by the statute of limitations. His R-suffix was applied in 2001. He didn't challenge it, and he didn't file a lawsuit until 2009. As the Court mentioned, the Classification Committees, their hands are tied. They do not have the legal authority to change an R-suffix, to remove an R-suffix, unless there is new and compelling information. The record makes that clear that there was none. So that if there had been an innocence project out there and had discovered that somebody else had committed the crime that he was charged with and that he had never been charged with a crime, that would be new and compelling? Yes, Your Honor. Actually, the California Code of Regulations, Title 15, Section 3377.1 sub b, provides specifically for that. If at some time there's a situation like that and it's subsequently found that the inmate is not guilty, is acquitted, if there are facts that show that he did not in have an R-suffix, they will have to remove it. If a witness recanted, would that be sufficient cause for a hearing? Well, Your Honor, I mean, in this case, I don't think we have that on the record. Hypothetically, I don't know how that would be before the committee, because they are not, as part of the process, they don't bring in outside victims to testify. Well, how would he get that? Well, let's suppose that she recanted as to the sexual assault part of it, but not as to the false imprisonment for which he would remain in jail. How could he possibly get that evidence in front of the committee? Well, Your Honor, it would be something that Mr. Cowlick himself and his legal counsel, if they challenged that through the court system. And they have challenged that through the court system in California? Yes. If they challenged it through the court system, and then Mr. Cowlick could present evidence of that, because he was permitted to present documentation. In fact, he kept showing them the minute order which he received back in 2001. Permission for appeal from the board's decision, the committee's decision? Absolutely. In fact, this situation, Mr. Cowlick, this was part of his appeal. Appeal to court? Appeal to the court? Appeal to a California court. Well, in this case, he filed initially, I think, a habeas corpus writ. Right. I don't know how he got into Federal court. What I'm asking is, in the ordinary course of things, if he goes to the committee and says, you've got to reclassify me, here's what I think is my new and compelling evidence, and the committee says, no, we don't think so, if he takes an appeal, where does it go from there? I believe it would go to the California courts if he filed a lawsuit. There's nothing else within the prison system that he can take it to. He would take it through the administrative appeal process. He would need to exhaust his administrative appeal, and at that point, he could file a civil lawsuit challenging that. And what would he have to file to get into California courts? A writ of mandamus? Well, Your Honor, I think that's possible. I'm not certain whether, in this case, the Federal court decided a civil case was most appropriate, but either a writ of mandamus or a civil action requesting injuncted relief. So, Your Honors, I guess what's troubling here is that there's such a stigma within the prisons to this R that, you know, the concern is that there ought to be a system that – I understand all the arguments about liberty and all of that, but we want to make sure that there's a system in place that is fair, that can determine whether or not it's proper. Yes, Your Honor. And I believe that – oh. Go ahead. Sorry. No, go ahead. Oh, all right. You know, on that issue – Not to reassure us that there is a system. There is a system. Absolutely. There is a system in place. And I want to point out, the Court is aware, I've cited to a case Wilkinson v. Austin. And I think that this case is really important to analogize, to take a look at the due process that the Supreme Court found constitutional when they were looking at transfer to a supermax facility that was in all regards essentially sensory deprivation for an indefinite period of time. The Court found that the due process that was given in that case was appropriate. It's essentially just the same as the process that Mr. Cowlick was given for an R suffix, which, by the way, to clarify, the R suffix, it is an internal use only. It is a code that goes within his inmate file to notify and alert prison staff that certain inmates may be more at risk, more prone to certain behaviors, and it helps them to make housing decisions, decisions about programming, what kind of jobs should they be allowed to be escorted by female staff. How do other prisoners learn that they've got an R designation? Part of the classification committee, as Mr. Cowlick came into the system in 2001, they reviewed his file. It was documented of his criminal charges for attempted rape. No, no, no. How do other prisoners? One of the claims is that he is stigmatized by both prison guards and other prisoners. How is it that other prisoners would learn that he had an R on his file? Well, they cannot learn of it from reviewing his file because that's specifically prohibited by the Code of Regulations. They're treated in a certain way. They're treated in a certain way, are they not? Well, you know, the R suffix is not publicized. It is not accessible. They – it is not known to the other inmates unless the inmates tell other inmates that they have one. There's really not any difference that would differentiate them in the eyes of the other inmates as far as, you know, the type of programming and such. It simply limits a few of the very basic things, like you can't have a certain type of job outside the secure area. And, of course, in this case we established that's moot because Mr. Cowlick had a life sentence. He wasn't eligible for that regardless of the R suffix. I'm curious about this point. Is there anything else that he is – if we – let's suppose that we granted full relief here for whatever reasons, for reasons to be determined, and told you to remove the R suffix. Would it change anything in his – other than the bare fact of classification, does it change any way that California treats him? Mr. Cowlick in particular.  Oh, yeah, Mr. Cowlick exclusively. Yes. For Mr. Cowlick, the only thing that he – he has very specific allegations of his alleged deprivations. The only thing that it would do for him is he would be able to participate in theory if everything – if the stars were aligned on every other matter, he would be able to participate in a volunteer program that he called Juvenile Diversion Program to help deter children from a life of crime. As I mentioned, the secure perimeter, the job assignment, he wants a job assignment in the loading dock. It's outside the secure area. As well as he says, I can't be in the minimum security because of it. Well, all those things we've established are moot because the Code of Regulations prohibits him from having any of those things because he's serving a life sentence. So the only thing that would be affected here is the Juvenile Diversion Program. Correct. And we believe strongly, Your Honor, that that does not rise to the level of a protected liberty interest. It's not an atypical and significant hardship under Stanton v. Conner. Does it affect anything outside the institution? If he ever is released, would it affect his parole eligibility or anything of that nature? Absolutely not, Your Honor. That's one of the things with the R suffix is it distinguishes it. It's qualitatively different than all the cases that were cited by the appellant. Those cases did involve situations where it affected parole eligibility or it mandated, it mandated psychotherapy treatment or it made them register as a sex offender upon release. Those things do not apply to the R suffix. Again, it's an internal code used and placed in a file to alert staff when they're in the prison. He doesn't have to go to any kind of sex offender treatment program within the institution because of the suffix. That's correct. He does not. I assume if he were to challenge it, because he wants a job in the loading dock or for whatever reason, and he had an administrative grievance, I suppose it would get out pretty soon, pretty fast, wouldn't it, in the prison that he had an R suffix? If he were to challenge it. Well, Your Honor, this case was a result of him challenging it and filing a grievance just for that reason. I'm just going to the, you know, this is all hush-hush secret for staff, but if he were to challenge it, I assume the prison population would know pretty fast. Actually not, Your Honor. May I finish? I believe my time's up. Yes. In this case, all of this information is kept within the classification committees. This is not information that gets out. When he files a grievance, those are processed. They're not, they're not, all that information is kept within the prison officials. It's not something that would get out simply because he filed a grievance, because in this case, that's just what he did. That's just what he was doing. It's challenging. This committee is comprised of? Well, this committee is comprised of usually a captain. It's all prison staff, correctional counselors present, a lieutenant or captain. We usually have a psychologist, a mental health professional, those types of things. And, of course, Mr. Cowlick, who was there at all of them. Thank you. Thank you very much. Time. Ms. Boyd, I think you've got some remaining time. I want to address three issues on my rebuttal. The first is the, what he suffers outside of his life sentence. The first is that not only does he not have opportunity to participate in the juvenile program, but he also is completely denied family visitation rights. The second. And is that only a consequence of the R? That's only a consequence of the R. Additionally, Mr. Cowlick is currently under review for a sentence. Because of the modified three-strike law, his sentence was reduced in December to only 12 years, and it was overturned. And so right now he's being considered, and it's possible his life sentence could be overturned, in which case he would also suffer housing and employment just as a result of the R suffix. Finally, with the life sentence, Mr. Cowlick alleges that these are just a few of the things that he has suffered. He wasn't able to fully present all the things that he'd suffered as a result of the R suffix. Those are the only things we have in the record. Excuse me. You said his sentence has been reduced to 12 years? It was reduced, and then the reconsideration was overturned. And so he's currently waiting for a reconsideration of his sentence. Okay. Because this looks like he's been in jail since 1999, right? So he would have been released in January had it not been overturned. So what's that all about? So he gets his sentence reduced, and then they change their mind? What? It was as a result of the third strike modification. The judge reduced his sentence, and then they determined that the prosecutor and the witness deserved to be there at the resentencing hearing. And so they vacated the resentencing, and it's rescheduled. For when? It hasn't been. There's no date yet. So he may be out in the streets here pretty quick. That would move the whole thing. Correct. Okay. I see my time's up. Thank you very much. Thank you. And we thank you for your pro bono service to the Court as well, as well argued on both sides. Thank you very much. Thank you. Yeah. That's really good. The next case on the oral argument calendar is Vega v. Ryan. Thank you. Counsel may approach whenever you're ready.
judges: Beistline, Schroeder, Bybee